**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Société Civile Succession Richard Guino, a French Trust,<br><br>    Plaintiff,<br><br>vs.<br><br>Beseder, Inc. (d/b/a Rima Fine Art), an Arizona corporation, et al.<br><br>    Defendants.<br><br>and Related Actions | No. CIV 03-1310-PHX-EHC<br><br>**ORDER** |

Pending before the Court are Defendants Beseder Inc., Dror Darel and Tracy Penwell's Motion for Reconsideration [dkt. 298] and Defendant Jean-Emmanuel Renoir's[1] Motion for Reconsideration [dkt. 300], both of which seek reconsideration of the Court's Order [dkt. 291] granting summary judgment for Plaintiff on Count One of the Amended Complaint. Pursuant to the Court's Order [dkt. 315], Plaintiff filed a Response to the Motions [dkt. 326], and Defendants Beseder Inc., Dror Darel and Tracy Penwell filed a Reply [dkt. 330], joined by Defendants Jean-Emmanuel Renoir and Louise Renoir Hernandez[2] [dkt. 332].

---

[1] The Defendants who filed Motions to Reconsider will be referred to collectively as "Defendants."

[2] Defendant Louise Renoir Hernandez did not file, or join in, a Motion for Reconsideration.

**Background**

The Motions for Reconsideration concern the status of copyright in sculptures created by Pierre-Auguste Renoir ("Renoir") and Richard Guino ("Guino"). Renoir and Guino created the sculptures between 1913 and 1917. [Dkts. 298, p. 4; 326, p. 3; 330, p. 2]. The sculptures were published in France as works of Renoir by 1917. [Dkts. 298, p. 4; 330, pp. 2-3; 362, p. 4]. The sculptures were published as Renoir-Guino works in 1974, in an exhibition for sale held at the Bristol Hotel in Paris, France. [Dkts. 299, exs. A (catalogue) & B (price list); 300, p. 2; 302, p. 2; 326, p. 7].

Plaintiff Société Civile Succession Richard Guino ("Plaintiff") is a French Trust that was created pursuant to an agreement between the estate of Pierre-Auguste Renoir and the estate of Richard Guino. Plaintiff registered the copyright to the sculptures with the Copyright Office in the United States on June 11, 1984.

Defendant Jean-Emmanuel Renoir sold some of the copyrighted sculptures, or molds and castings thereof, to Defendants Beseder, Inc., Dror Darel and Tracy Penwell, who advertised and sold the sculptures and castings at their gallery in Scottsdale, Arizona.

On March 1, 2005, Plaintiff filed an Amended Complaint alleging, *inter alia*, copyright infringement.[3] [Dkt. 190]. Defendants filed Counterclaims asking the Court to declare that Plaintiff has no copyright in the sculptures. [Dkts. 73, 111].

On September 7, 2005, the Court granted summary judgment for Plaintiff on Count One of the Amended Complaint alleging copyright infringement.[4] [Dkt. 291]. The Court

---

[3] Plaintiff alleges it holds copyright to the following sculptures (VA numbers are the copyright registration numbers): (1) Petite Tete De Venus (Tete de la Petite Venus), VA 180-810; (2) La Maternite, VA 180-811; (3) Buste de Madame Renoir, VA 180-812; (4) Venus Vitrix, VA 180-813; (5) Petite Venus Debout, VA 180-814; (6) Medaillon Cezanne, VA 180-815; (7) Variante Petit Forgeron, VA 74-833; (8) Le Forgeron, VA 74-834; (9) La Grande Laveuse, VA 74-835; (10) La Laveuse (Petite Laveuse or "L'Eau"), VA 74-836; and (11) La Laveuse (La Laveuse Moyenne ou L'Eau), VA 74-837. [Dkt. 190, pp. 6-7].

[4] The Motion for Summary Judgment [dkt. 165] and Cross-Motions for Summary Judgment [dkts. 170, 173] referred to Count One of the Complaint [dkt. 1]. While the

found (1) that Plaintiff held copyrights in the sculptures and (2) that Defendants had infringed the copyrights by reproducing, displaying and selling the sculptures. Defendants do not challenge the second finding, but ask the Court to reconsider the first.

**Legal Standard**

"[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." 389 Orange Street Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999).

**Discussion**

**A.    The Court's Finding of Copyright Protection under 17 U.S.C. § 302(b)**

In granting summary judgment for Plaintiff, the Court found that the sculptures were first published in 1917. [Dkt. 291, p. 6]. The Court further found that the sculptures were not first published as Renoir-Guino works until 1983. [Dkt. 291, p. 9 ("The year 1983 was the first year that the works were published under Guino's name.")]. The Court treated 1983 as a "'new' date of first publication" and found "that Guino is entitled to copyright protection in the works as provided by law in 1983 upon the 'new' date of first publication." [Dkt. 291, p. 9]. Therefore, the Court found that the sculptures "are entitled to United States copyright protection until the year 2043." [Dkt. 291, p. 10].

---

Motions for Summary Judgment were pending, the Court granted leave to amend the Complaint to add a claim for conversion [dkt. 186] and Plaintiff filed an Amended Complaint [dkt. 190]. Count One of the Complaint is substantially identical to Count One of the Amended Complaint. [Compare dkt. 1, ¶¶ 36-41, with dkt. 190, ¶¶ 36-41]. Thus, the Court's Order granted summary judgment for Plaintiff on Count One of the Amended Complaint.

- 3 -

In so finding, the Court applied the copyright protection term provided by 17 U.S.C. § 302(b)[5], which provides a copyright term "consisting of the life of the last surviving author and 70 years[6] after such last surviving author's death." Section 302[7] only applies to "a work created on or after January 1, 1978."

In applying § 302(b), the Court did not address whether the sculptures were "created on or after January 1, 1978," instead focusing on the "new" first publication date as the basis for applying § 302(b). Publication is irrelevant in determining whether the copyright protection provided by § 302, enacted in 1976, applies to a particular work. As the United States Supreme Court explained:

> In 1976, Congress altered the method for computing federal copyright terms. 1976 Act §§ 302-304. For works created by identified natural persons, the 1976 Act provided that federal copyright protection would run from the work's creation, not- as in the 1790, 1831, and 1909 Acts- its publication.

Eldred, 537 U.S. at 195, 123 S. Ct. at 776. Because the date of creation- not the date of publication- is the basis for copyright protection under § 302, § 302(b) cannot apply based on the 1983 "new" publication date.

---

[5] Unless otherwise stated, all sections cited are from Title 17 of the United States Code.

[6] As enacted in 1976, § 302 provided a 50-year term of protection after the death of the last surviving author. The term was increased to 70 years by amendment in 1998. See Eldred v. Ashscroft, 537 U.S. 186, 193, 123 S. Ct. 769, 775 (2003) (holding that the 1998 amendment is constitutional).

[7] As titled and in relevant part, § 302 provides:

Duration of copyright: Works created on or after January 1, 1978

    (a) In general. Copyright in a work created on or after January 1, 1978, subsists from its creation and, except as provided by the following subsections, endures for a term consisting of the life of the author and 70 years after the author's death.

    (b) Joint works. In the case of a joint work prepared by two or more authors who did not work for hire, the copyright endures for a term consisting of the life of the last surviving author and 70 years after such last surviving author's death.

1  Applying the copyright protection provided by § 302(b) was clear error because the
2  works at issue in this case were not "created on or after January 1, 1978." See § 302(a).
3  Under the copyright law, "[a] work is 'created' when it is fixed in a copy or phonorecord
4  for the first time." § 101. According to the parties, Renoir and Guino created the
5  sculptures between 1913 and 1917.[8]

**B.     Copyright Protections for Works Created before January 1, 1978**

Given the finding that § 302 does not apply, the status of copyright protection for the sculptures remains to be determined. As previously noted, the Copyright Act of 1976 changed the basis of copyright protection from publication of a work to creation of a work. See Eldred, 537 U.S. at 195, 123 S. Ct. at 776. That change applies to works "created on or after January 1, 1978." § 302. In making that change, Congress also provided copyright protection terms for works created before 1978. Currently, copyright law protects four types of works: (1) works "created on or after January 1, 1978," § 302; (2) works copyrighted as of January 1, 1978, § 304; (3) works "created before January 1, 1978, but not theretofore in the public domain or copyrighted," § 303(a); and (4) foreign works not in the public domain in their country of origin but in the public domain, for enumerated reasons, in the United States, § 104A. As discussed above, § 302 does not apply in this case. The sculptures were copyrighted in 1984; § 304 does not apply. The question is whether the copyright protection of either § 303(a) or § 104A applies. The application of those sections turns on whether the works passed into the public domain in the United States. See §§ 303(a) (applies to works not in the public domain before January 1, 1978) & 104A (foreign works in public domain in the United States).

The copyright statute does not define the phrase "public domain." See § 101 (definitions). Under the 1909 Copyright Act, a work enters the public domain when it is

---

[8] Plaintiffs state that the works were created in 1916. [Dkt. 326, p. 3]. Defendants state that the works were created between 1913 and 1917. [Dkts. 298, p. 4; 330, p. 2]. That difference is inconsequential in determining that the works were not "created on or after January 1, 1978."

- 5 -

published without copyright protection.[9] <u>ABKCO Music, Inc. v. LaVere</u>, 217 F.3d 684, 688 (9th Cir. 2000) ("When a work was published, it lost common law protection. The owner [of the work] could obtain federal protection for the published work by complying with the 1909 Act's requirements; otherwise, the work entered the public domain.").

Publication in a foreign country affects whether the work is published without copyright protection, and thereby affects whether the work is in the public domain in the United States. The Ninth Circuit has held "that publication without a copyright notice in a foreign country [does] not put the work in the public domain in the United States." <u>Twin Books Corp. v. Walt Disney Co.</u>, 83 F.3d 1162, 1167 (9th Cir. 1996). In that case, the children's tale <u>Bambi, A Life in the Woods</u> was published in Germany in 1923 without a copyright notice. <u>Bambi</u> was subsequently published in Germany in 1926 with a copyright notice. Copyright was registered in the United States in 1927 and renewed in 1958. <u>Id.</u>, at 1164. Under the 1909 Copyright Act, copyright must be renewed within 28 years of the commencement of copyright protection or the copyright would expire. <u>Id.</u>, at 1165. Therefore, the 1958 renewal was timely if copyright protection had commenced with the 1926 publication; untimely if it commenced with the 1923 publication. <u>See id.</u>, at 1168.

The Ninth Circuit dealt first with the question whether the 1923 publication without notice placed <u>Bambi</u> in the public domain in the United States. <u>Id.</u>, at 1165. The Court found that this was a "heatedly debated question." <u>Id.</u>, at 1166 (internal quotation omitted); <u>accord</u> 2 USA International Copyright Law and Practice § 3[2][b][3] fn. 46 (Paul Edward Geller gen. ed. 2005) ("It has never been clearly established whether a

---

[9] This rule should apply to the copyright law as currently enacted. The 1976 Act changed the basis for computing copyright protection from publication to creation. <u>Eldred</u>, 537 U.S. at 195, 123 S. Ct. at 776. That change will affect whether a work has been published without copyright protection, but does not change the rule that publication without copyright protection places a work in the public domain.

- 6 -

1  work only published abroad is to be treated as a published work for purposes of
2  duration under U.S. law or should be treated as unpublished for these purposes."). The
3  Court noted that "early courts dealing with the issue indicated that a publication abroad
4  without any copyright notice, like a publication in this country without any copyright
5  notice, would also serve to place the published work into the public domain." Ibid. The
6  Court found that those decisions "were at odds" with Supreme Court decisions holding
7  "that United States copyright law should not be given extraterritorial effect." Ibid.
8  Finally, the Court adopted the holding of Heim v. Universal Pictures Co., 154 F.2d 480
9  (2d Cir. 1946), "finding it to be well-reasoned and the latest appellate pronouncement on
10 the precise issue" and "recognized as such by the leading treatise on copyright,
11 Nimmer on Copyright (1994)." Twin Books, 83 F.3d at 1167. The Court read Heim to hold
12 that "publication without a copyright notice in a foreign country did not put the work in
13 the public domain in the United States." Twin Books, 83 F.3d at 1167.
14     The Ninth Circuit next addressed the question whether the 1923 publication in
15 Germany without notice of copyright commenced the term of United States copyright
16 protection. Ibid. The Court looked to the language of the 1909 Copyright Act in
17 rejecting "the proposition that publication abroad without notice of copyright secures
18 protection under the 1909 Copyright Act." Id., at 1168. The Court reversed the district
19 court, which found the 1923 foreign publication without notice commenced the
20 copyright term. Ibid. The Court found that the copyright term commenced in 1926, when
21 Bambi was republished in Germany with notice of copyright. Therefore, the Court found
22 that the 1954 renewal was timely. Ibid.

23                 **1. Criticism of the Ruling in Twin Books**
24     The Court will follow Twin Books, see infra, but expresses criticism of the rule
25 announced in Twin Books to avoid "bur[ying] the issue by proceeding in a summary
26 fashion." Eberhart v. United States, __ U.S. __, 126 S. Ct. 403, 407 (2005) (approving of
27 the Seventh Circuit's approach in applying Supreme Court precedent after expressing
28

1  doubts). The Twin Books Court's reading of Heim is arguably incorrect, leads to an
2  unreasonable result, and unduly restricts the copyright restoration provisions of
3  §104A.
4      Heim involved a "mistake of date in the notice of copyright." 154 F.2d at 486. The
5  work at issue in that case was a song published in Hungary on November 11, 1935
6  without a copyright notice. Ibid. Copyright in the song was registered on September 14,
7  1936. Ibid. The Second Circuit construed the 1909 Act, "as to publication in a foreign
8  country by a foreign author..., not to require, as a condition of obtaining or maintaining
9  a valid American copyright, that any notice be affixed to any copies whatever published
10 in such foreign country." Ibid. Concurring, Judge Clark found that "[t]he opinion holds
11 that American copyright is secured by publication abroad without the notice of
12 copyright admittedly required for publication here." Id., at 488. Heim, therefore,
13 arguably stands for the rule that foreign publication without a copyright notice can
14 commence the term of an American copyright, not the rule that foreign publication
15 cannot place a work in the public domain in the United States, which the Ninth Circuit
16 adopted in Twin Books, 83 F.3d at 1167.
17     Although those rules are closely related, they have dramatically different
18 consequences. The Heim rule, that foreign publication without notice can commence
19 the term of copyright, effectively waives, for foreign works, the copyright notice
20 required to secure copyright protection under the 1909 Act. See 2 Melville B. Nimmer &
21 David Nimmer, Nimmer on Copyright, § 7.12[D][2][a] (2005) (the Court in Heim
22 "concluded that notice in connection with such foreign publications was required
23 neither to obtain nor to maintain United States copyright"). Applying the Heim rule to a
24 foreign publication, the term of copyright would commence as of the date of
25 publication, even if the first publication was in a foreign country and without notice of
26 copyright. See Nimmer on Copyright, at § 4.01[C][1].
27
28

1  The Twin Books rule, in contradistinction, provides that a foreign publication
2  without copyright notice does not commence the term of copyright. Twin Books
3  expressly rejected "the proposition that publication abroad without notice of copyright
4  secures protection under the 1909 Act." 83 F.3d at 1168. The Court rejected that
5  proposition without discussing Heim, 154 F.2d at 486, which supports the proposition
6  that foreign publication without notice secures copyright protection. Nimmer on
7  Copyright, § 4.01[C][1]. The Court in Twin Books "reverse[d] the district court's finding
8  that the copyright for Bambi was secured and commenced in 1923." 83 F.3d at 1168.
9  Fortuitously, Bambi was republished in Germany in 1926 with notice. Twin Books, 83
10 F.3d at 1164. That republication enabled the Court to find that "that the initial copyright
11 for Bambi was secured and commenced in 1926, when it was published with the notice
12 of copyright required by the 1909 Act." 83 F.3d at 1168.

13 The Twin Books rule leads to an unreasonable result when applied to a pre-1978
14 work published in a foreign country that has not been republished with a notice of
15 copyright. Under the Twin Books rule, the foreign publication without copyright notice
16 would neither place the work in the public domain in the United States, see id., at 1167
17 ("publication without a copyright notice in a foreign country did not put the work in the
18 public domain in the United States"), nor commence the term of copyright, see id., at
19 1168 (finding that 1923 publication abroad without copyright notice did not commence a
20 term of copyright protection). Because such a work was "created before January 1,
21 1978, but not theretofore in the public domain or copyrighted" it would be protected by
22 copyright under § 303(a). This is so even in the case of an ancient work. Nimmer on
23 Copyright, § 4.01[C][1] ("even a work of ancient origin- such as a Greek tragedy that
24 was published (obviously without notice) millennia ago, but which has not been
25 republished with a U.S. style copyright notice- is still protected today in this

country.");[10] cf. 2 USA International Copyright Law and Practice § 3[2][b][3] fn. 46 (noting that the Copyright Office has not incorporated the Twin Books rule into its regulations, continuing to require a copyright application to "state the date of first publication in any country where the work is first published"). This is also the result, as discussed below, in this case, even though the owners of the works have enjoyed the benefits of displays and public sales of the sculptures since 1917. Were the 1917 publication to have commenced the term of copyright, the sculptures would have had two 28-year terms of copyright protection, and copyright would have expired in 1973. See Eldred, 537 U.S. at 194, 123 S. Ct. at 775 (under 1909 Act, copyright lasted "28 years from publication, renewable for an additional 28 years").

The Twin Books rule would prevent a foreign work published without notice from being eligible for copyright restoration under § 104A, which expressly provides copyright restoration for foreign works published without notice of copyright. See § 104A(h)(6)(C)(i). Section 104A was enacted to restore "copyrights of foreign holders whose works, though protected under the law where initially published, fell into the public domain in the United States." Luck's Music Library v. Gonzales, 407 F.3d 1262 (D.C. Cir. 2005); accord Golan v. Gonzalez (sic), 2005 U.S. Dist. LEXIS 6800, *2 (D. Colo. Apr. 20, 2005) (section 104A "restores copyright protection to works of foreign authors"). A prerequisite to restoration under § 104A is that a work is in the public domain, for enumerated reasons, in the United States. § 104A(h)(6)(C). One of those reasons is "noncompliance with formalities imposed at any time by United States copyright law including... lack of proper notice." § 104A(h)(6)(C)(i). The Twin Books rule provides that a work published in a foreign country without copyright notice is not

---

[10] For a jocular expression of this view, see David Nimmer, An Odyssey Through Copyright's Vicarious Defenses, 73 N.Y.U. L. Rev. 162, 172-73 (1998), where the author imagines Achilles asserting copyright protection in The Iliac on grounds that the ancient publication of that work did not commence the copyright term or place the work in the public domain in the United States.

- 10 -

in the public domain in the United States, 83 F.3d at 1167, unduly preventing the copyright restoration of such a work as provided by § 104A(h)(6)(C)(i).

### 2. Application of Twin Books to this Case

Despite this criticism, Twin Books governs this case as the most recent decision on this issue by the Ninth Circuit, or any of the Circuit Courts.[11] The sculptures in this case were published in France as Renoir works by 1917. [Dkts. 326, p. 4; 330, p. 3]. The sculptures were published as Renoir-Guino works in 1974, in an exhibition for sale held at the Bristol Hotel in Paris, France. [Dkts. 299, exs. A (catalogue) & B (price list); 300, p. 2; 302, p. 2; 326, p. 7]. Neither party asserts that the sculptures were published with notice of a United States copyright. Because those publications were in a foreign country and without notice of United States copyright they "did not put the work in the public domain in the United States." Twin Books, 83 F.3d at 1167.

Section 104A is inapplicable because, pursuant to Twin Books, the works have not passed into the public domain in the United States as required in subsection (h).[12]

---

[11] One treatise asserts that Twin Books has not settled the question of the affect of a foreign publication without notice. 2 USA International Copyright Law and Practice § 5[a][i] ("Under the 1909 Act, questions concerning the absence of notice on copies published abroad before 1978, is still the subject of debate even in light of an important decision [Twin Books] in one influential circuit."). The Court can find no post-Twin Books cases debating that question.

The question was nearly raised in Condon Art B.V. v. Walker, 1996 U.S. Dist. LEXIS 20708 (N.D. Cal. 1996), filed in August 1996 after Twin Books was filed in May 1996. Condon Art involved a dispute over works and derivative works created by M.C. Escher, a Dutch graphic artist, indicating his works may have been published abroad. The Court did not have occasion, however, to address questions raised by foreign publication because it found "no evidence suggesting that either the original Escher drawings or the master blocks have ever been subject to a general publication within the meaning of the Copyright Act." Id., at *12.

[12] The Copyright Restoration Act, § 104A, would not apply to the sculptures in the absence of Twin Books. Section 104A does not apply to works whose term of United States copyright protection has naturally expired. Golan, 2005 WL 914754 at *16. In the absence of the Ninth Circuit's decision in Twin Books, the copyright term for the

- 11 -

Section 303 (a) applies because the sculptures were "created before January 1, 1978, but not theretofore in the public domain or copyrighted." The sculptures were created between 1913 and 1917. [Dkts. 298; p. 4, 326, p. 3; 330, p. 2]. Pursuant to Twin Books, the sculptures have not passed into the public domain. The sculptures were copyrighted in 1984.

Section 303(a) provides copyright protection "for the term provided by section 302," which is a term of 70 years after the death of the last surviving author. As the Court previously found: "Renoir passed away in 1919, and Guino died in 1973. Thus, the sculptures are entitled to United States copyright protection until the year 2043." [Dkt. 291, p. 10].

**Conclusion**

The Court again concludes that the sculptures have copyright protection until 2043. The Court is of the opinion that there are substantial grounds for difference of opinion regarding the existence of copyright protection for the sculptures. The existence of copyright in these sculptures is a question material to the resolution of this case. First, the existence of copyright, and Defendants' consequent liability for infringement, affect whether Plaintiff may be awarded actual or statutory damages, costs and attorneys' fees, injunctive relief, and seizure and delivery of the infringing materials to Plaintiff, as

---

sculptures would have commenced in 1917. See the district court's order in Twin Books, 877 F. Supp. 496, 498-99 (N.D. Cal. 1995) (finding that the 1923 German publication of Bambi commenced the term of copyright). If the copyright in the sculptures commenced in 1917, this Court's previous discussion would be determinative:

> Assuming that the works were registered, the term of protection would have been 28 years with an optional 28 year renewal. The term of copyright protection would have naturally expired in 1973. Thus, the Copyright Restoration Act does not apply.

[Dkt. 291, p. 8].

1  prayed for in the Amended Complaint.[13] [Dkt. 190, pp. 11-12]. Second, the only claims
2  remaining are Plaintiff's Lanham Act and common law conversion claims, which
3  arguably turn on, or are at least are affected by, the resolution of the copyright claim.
4  Given this situation, an immediate appeal may advance the termination of this case. See
5  28 U.S.C. § 1292(b).
6   Accordingly,
7   **IT IS ORDERED** that Defendants Beseder Inc., Dror Darel and Tracy Penwell's
8  Motion for Reconsideration [dkt. 298] and Defendant Jean-Emmanuel Renoir's Motion
9  for Reconsideration [dkt. 300] are **GRANTED IN PART** and **DENIED IN PART**.
10   **IT IS FURTHER ORDERED** that the Court's Order [dkt. 291] granting Plaintiff's
11  Motion for Partial Summary Judgment and denying Defendants' Beseder, Inc., Dror
12  Darel, Tracy Penwell and Jean-Emmanuel Renoir's Cross-Motions for Partial Summary
13  Judgment is **AFFIRMED** for the reasons stated in this Order.
14   **IT IS FURTHER ORDERED** that this Order involves controlling questions of law as
15  to which there are substantial grounds for difference of opinion regarding copyright
16  protection for the sculptures and that an immediate appeal may materially advance the
17  ultimate termination of the litigation.
18   DATED this 30th day of January, 2006.

_____
Earl H. Carroll
United States District Judge

---

[13] By Order issued this same day, the Court addresses Plaintiff's request for injunctive relief. Plaintiff's damages, among other things, have yet to be determined, preventing the Court from entering final judgment on the copyright infringement claim pursuant to Fed. R. Civ. P. 54(b).