1  **WO**

2

3

4

5

6            IN THE UNITED STATES DISTRICT COURT

7            FOR THE DISTRICT OF ARIZONA

8

9  Societe Civile Succession Richard Guino,)        No. CV 03-1310-PHX-MHM
   a French Trust,                          )
10                                          )        **ORDER**
                Plaintiff,                  )
11                                          )
   vs.                                      )
12                                          )
                                            )
13  Beseder Inc. (d/b/a Rima Fine Art), an)
   Arizona Corporation, et al.,             )
14                                          )
                Defendants.                 )
15  _____)
                                            )
16  and Related Actions                     )
   _____)
17

18        Currently before the Court are the following post-trial Motions: (1) Plaintiff Societe

19  Civile Succession Richard Guino, a French Trust's ("Plaintiff"), Motion for Judgment Under

20  Fed.R.Civ.P. 50(b), or in the Alternative, for a New Trial under Rule 59 (Dkt.#550); (2)

21  Plaintiff's Application for Award of Attorney Fees and Costs (Dkt.#551); (3) Defendants

22  Beseder, Inc., d/b/a/ Rima Fine Art, Dror Darel and Tracy Penwell's ("the Rima

23  Defendants") Renewed Motion for Sanctions (Dkt.#555); (4) the Rima Defendants' Motion

24  for Attorneys' Fees Pursuant to the Lanham Act (Dkt.#557); (5) Defendants Jean Emmanuel

25  Renoir ("Defendant Renoir") and Louise Hernandez Renoir's ("Defendant Hernandez")

26  Motion for Attorneys' Fees (Dkt.#563); and (6) Defendants Renoir and Hernandez's

27  Renewed Motion for Sanctions against Plaintiff (Dkt.#580).  After reviewing the pleadings,

28  the Court issues the following Order.

## I.        Brief Background

Because the Court has recited the factual background underlying this litigation on several prior occasions, it will not do so again, except with respect to the pending Motions. The pending Motions derive primarily out of the jury's verdict on November 2, 2006, and the Amended Judgment filed on March 16, 2007.  The jury's November 2, 2006 verdict awarded copyright infringement damages in favor of Plaintiff against the Rima Defendants in the amount of $5,000 for each of the ten Renoir-Guino works at issue; and $7,500 each for the same works against Defendant Renoir pursuant to 17 U.S.C. § 504(c).  (Dkt.#514). Additionally, the jury found in favor of Defendant Renoir on his counterclaim of false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), against Plaintiff and awarded him $90,000 in compensatory damages and $30,000 in lost profits.  On March 15, 2007, the Court, in its discretion pursuant to 17 U.S.C. § 1117(a), increased the lost profits award from $30,000 to $45,000 as well as imposed injunctive relief against Plaintiff which required Plaintiff to identify the works of art subject to Defendant Renoir's counterclaim to be identified as unauthentic and/or unauthorized duplicates of the original Renoir-Guino works. (Dkt.#547).   During trial, the Court directed a verdict pursuant to Fed.R.Civ.P. Rule 50(a) in favor of the Rima Defendants and Defendants Hernandez and Renoir on Plaintiff's False Designation and False Description of Sponsorship Lanham Act claim and directed a verdict in favor of Defendant Hernandez on Plaintiff's copyright infringement claims against her. Judgment was thus entered accordingly and the above-mentioned Motions were filed thereafter.  (Dkt.#548).

## I.        Plaintiff's Motion for Judgment as a Matter of Law or in Alternative for New Trial

### A.        Background

Plaintiff takes issue with the jury's verdict in favor of Defendant Renoir's false advertising Lanham Act counterclaim against Plaintiff.  In doing so, Plaintiff renews its previously rejected motion for judgment as a matter of law with the instant Motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b), or in the alternative, Motion for

new trial under Fed.R.Civ.P. 59.  Plaintiff specifically contends that Defendant Renoir: (1) failed to prove the elements of his false advertising counterclaim and (2) failed to supply evidence on which to ground a money damages award against Plaintiff even if the claim was valid.

**B.    Standard**

Rule 50(b) provides in pertinent part:

> If the court does not grant a motion for judgment as a matter of law made at [the close of all the evidence], the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment . . . . The movant may alternatively request a new trial or join a motion for a new trial under Rule 59.  In ruling on a renewed motion, the court may:
>
>     (1) if a verdict was returned:
>         (A)    allow the judgment to stand,
>         (B)    order a new trial, or
>         (C)    direct entry of judgment as a matter of law.

Fed.R.Civ.P. 50(B)

Judgment as a matter of law may be granted "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue . . ." Juhnke v. EIG Corp., 444 F.2d 1323, 1325 (9th Cir. 1971) (noting that directed verdict and motion for judgment notwithstanding the verdict "are measured by the same standards as the latter is merely a renewal of the former.").  In considering a motion for judgment as a matter of law under Rule 50(b), "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000).  Therefore, the Court's role is not to substitute its view of the evidence for that of the jury.  Winarto v. Toshiba Am. Electronics Components, 274 F.3d 1276, 1283 (9th Cir. 2001).  When two possible sets of inferences are supported by the record, "the inferences that support the jury's verdict of course win the day." Id. at 1287.

Under Rule 59 of the Federal Rules of Civil Procedure, the Court "may grant a new trial if 'the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of

1   justice.'" <u>Silver Sage Partners, Ltd. v. City of Desert Hot Springs</u>, 251 F.3d 814, 819 (9th Cir.

2   2001) (quoting <u>United States v. 4.0 Acres of Land</u>, 175 F.3d 1133, 1139 (9th Cir. 1999)).

3       **C.     Analysis**

4           **(1)     Elements of Plaintiff's False Advertising Claim**

5           As generally agreed to by Plaintiff and Defendant Renoir, the elements of a false

6   advertising claim under the Lanham Act are:

7           (1) a false statement of fact by the defendant in a commercial advertisement
            about its own or another's product; (2) the statement actually deceived or has
8           the tendency to deceive a substantial segment of its audience; (3) the deception
            is material, in that it is likely to influence the purchasing decision; (4) the
9           defendant caused its false statement to enter interstate commerce; and (5) the
            plaintiff has been or is likely to be injured as a result of the false statement,
10          either by direct diversion of sales from itself to defendant or by a lessening of
            goodwill associated with its products.

11  <u>Southland Sod Farms v. Stover Seed Co.</u>, 108 F.3d 1134, 1139 (9th Cir. 1997) (citations
    omitted).

12
            The Lanham Act provides for both injunctive and monetary relief.  15 U.S.C. § 1117.
13
            Plaintiff argues, with respect to Defendant Renoir's obligation to meet the elements
14
    of his false advertising claim, that Defendant Renoir failed to meet his burden in showing:
15
    (1) Plaintiff was in commercial competition with Defendant Renoir or that Plaintiff
16
    advertised; and (2) the existence of actual harm or damage to Defendant Renoir to support
17
    the jury's monetary award.
18
            **(2)     Commercial Competition**
19
            The inquiry into whether there is an actionable commercial statement under the
20
    Lanham Act can be addressed with four sub-elements: (1) a commercial statement; (2) by a
21
    defendant who is in commercial competition with the plaintiff; (3) for the purpose of
22
    influencing consumers to buy defendant's product; (4) that is disseminated sufficiently to the
23
    relevant public.  Of these elements, Plaintiff argues that Defendant Renoir failed to show that
24
    Defendant Renoir was in commercial competition with Plaintiff.   In addition, Plaintiff
25

26

27

28

1  contends that Defendant Renoir failed to produce any evidence that Plaintiff advertised a

2  commercial statement.[1]

3      In reviewing the trial record, the Court finds that these arguments fail, as there was

4  sufficient evidence to support the jury's verdict in this respect.  For instance, contrary to

5  Plaintiff's assertion, the jury did hear evidence describing Defendant Renoir's involvement

6  in the art industry.  Defendant Renoir testified that he has been actively dealing in art for a

7  major portion of his life, has actively been dealing in Renoir sculptures since approximately

8  1989, and estimated that he had participated as a buyer, seller, or broker in over 2,000 art

9  deals since 1983.  The jury also heard evidence regarding Plaintiff's involvement in the art

10 industry.  Michael Guino, Plaintiff's representative, testified that the function of Plaintiff

11 Societe, a French Trust, is to protect the artwork of Richard Guino "and the exportation for

12 the sculpture he made with Renoir." (October 24, 2006 Transcript. Dkt.#538, p. 6, ll.13-14).

13 Further, the jury heard evidence connecting Plaintiff with the exhibition of Renoir-Guino

14 works at the Ostrovsky Gallery in Scottsdale, Arizona in 2005.    Emmanuel Javogue,

15 Plaintiff's former representative in the United States, testified throughout his deposition that

16 his job was to promote the Renoir-Guino works and that Plaintiff was directly involved in

17 the planning of the Ostrovsky Exhibition to exhibit such works.  (October 31, 2006

18 Transcript, Dkt.#541, pp. 73-75 ll. 15-17).  The jury was also aware that Plaintiff was suing

19 Defendant Renoir for copyright infringement based on Defendant Renoir's wrongful conduct

20 with respect to the Renoir-Guino works.  Considering such evidence, there is ample evidence

21 to support a finding that Plaintiff and Defendant were in commercial competition with one

22 another in the promotion, buying, selling and brokering of art, and that Plaintiff was aware

23 of Defendant Renoir's activities.

24

25

26      [1]In Plaintiff's Fed.R.Civ.P. 50(a) motion at the close of Defendant Renoir's case, Plaintiff requested judgment as a matter of law, in part, because of its assertion that Defendant Renoir and Plaintiff "operate in different marketing channels." (Dkt.#500, p.12).

27 The Court finds this sufficient to preserve the argument set forth now as to a lack of

28 commercial competition to preserve it for a Rule 50(b) motion.

1    The Court also finds unpersuasive Plaintiff's argument that there was no evidence

2    suggesting that Plaintiff was involved in any advertisement of a commercial statement.  Mr.

3    Javogue testified that Plaintiff was directly involved in the promotion of art in the United

4    States and directly participated in the planning of the Ostrovsky Exhibition to show the

5    Renoir-Guino works to the public.  (Id.).  Moreover, trial exhibit 634, which was stipulated

6    to by the parties and produced to the jury, advertised the Ostrovsky Exhibition and identified

7    Plaintiff as a sponsor of the event.  Such evidence supports the idea that Plaintiff was

8    involved in the commercial advertisement of the art at issue.

9    Thus, the Court finds there is sufficient evidence in the record to support the existence

10   of commercial competition between Plaintiff and Defendant Renoir, and that Plaintiff

11   participated in the promotion or advertisement of the art works at issue.

12                   **(3)    Evidence of Damages to Defendant Renoir**

13   Plaintiff contends that Defendant Renoir's monetary award from the jury of $90,000

14   in actual damages and $30,000 in lost profits must fail because of the lack of any credible

15   evidence of actual damage supporting his false advertising counterclaim.[2]   As an initial

16   matter, the Court finds that Plaintiff's challenge to the jury's lost profits award on the basis

17   of the absence of actual damage is misplaced.  Notably, the jury was instructed as to possible

18   awards based on Defendant Renoir's actual damages incurred from Plaintiff's activities, as

19   well as lost profits based on Plaintiff's profits from any infringing activities.  Because

20   Plaintiff only contests the existence of actual damage to support the jury's award, Plaintiff's

21   argument is appropriately directed at the compensatory damages of $90,000 awarded to

22   Defendant Renoir and not the lost profits award based on Plaintiff's profits.  See Int'l Star

23   Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc., 80 F.3d 749, 753 (2d Cir. 1996)

24   (holding that absence of actual damages does not preclude a recovery of the infringing

25   party's profits); X-It Products, LLC v. Walter Kiddie Portable Equip., Inc., 227 F.Supp.2d

26

27           [2]Plaintiff raised this issue regarding the absence of evidence indicating damage to
     Defendant Renoir in Plaintiff's motion for directed verdict at trial. (Dkt.#500, p.6).  Thus,
28   the issue was properly preserved by Plaintiff.

1  494, (E.D.Va. 2002) (stating that lost profits award need not be based upon actual damages).

2  Accordingly, the Court will review Plaintiff's evidentiary challenge only in the context of

3  the jury's $90,000 actual damages award.[3]

4      A review of the law regarding the evidence necessary to sustain a monetary award

5  based upon actual damages under the Lanham Act guides the Court's inquiry.  In Harper

6  House, Inc. v. Thomas Nelson, Inc., the Ninth Circuit instructed that "[i]n a suit for damages

7  under section 43(a) . . . actual evidence of some injury *resulting from the deception* is an

8  essential element of the plaintiff's case." 889 F.2d 197, 210 (9th Cir. 1989) (emphasis in

9  original).    Subsequent to the holding in Harper House, the Ninth Circuit, in Lindy Pen Co.,

10 Inc. v. Bic Pen Corp., a trademark infringement case, stated that "an inability to show actual

11 damages does not alone preclude a recovery under section 1117," but rather is more

12 appropriately fashioned "based on the totality of the circumstances." 982 F.2d 1400, 1411

13 (9th Cir. 1993).  The Ninth Circuit again referenced the "totality of the circumstances"

14 analysis in Southland Sod Farms v. Stover Seed Co., where it reversed the district court's

15 grant of summary judgment on the plaintiff's false advertising claim because of lack of

16 causation and injury.  108 F.3d at 1145-46.  The Ninth Circuit held that no injury need be

17 shown where injunctive relief is sought under the Lanham Act, and stated that "when . . . a

18 § 43(a) claim involves false advertising . . . courts have been more willing to allow monetary

19 damages even without a showing of actual consumer confusion."  Id. at 1146.  This recent

20 Ninth Circuit authority suggests that the issue of damages may be evaluated under the

21 "totality of the circumstances" in Lanham Act cases; however, evidence of some damage or

22 harm to a Lanham Act plaintiff is still required to justify such an award.  See Eastman Kodac

23 Co. v. Southern Photo Materials Co., 273 U.S. 359, 379 (1927) ("Damages are not rendered

24 uncertain because they cannot be calculated with absolute exactness," but there must be a

25

26

---

27      [3] Notably, 15 U.S.C. § 1117(a) provides that a plaintiff is entitled, subject to the
principles of equity, to recover "(1) defendant's profits, (2) any damages sustained by the
28 plaintiff, and (3) the costs of the action."

1    reasonable basis for the computation); <u>Lindy Pen</u>, 982 F.2d at 1407 (when seeking damages,

2    "[a] plaintiff must prove both the fact and the amount of damage.").

3         In this case, Defendant Renoir's false advertising claim, which is based on the non-

4    comparative false representations by Plaintiff regarding certain works of art,  requires that

5    Defendant Renoir offer evidence that he was damaged by Plaintiff's false representations.

6    Unlike <u>Southland Sod</u>, where the Ninth Circuit stated that "[p]ublication of deliberately false

7    <u>comparative</u> claims gives rise to a presumption of actual deception and reliance," 108 F.3d

8    at 1146 (citations omitted) (emphasis added), this case does not involve comparative

9    advertising, which in the Court's view, is significant.  For instance, the Eighth Circuit warned

10   that, "[i]n a suit for money damages where a defendant misrepresented its own product but

11   did not specifically target a competing product, plaintiff may be only one of many

12   competitors, and without proof of causation and specific injury each competitor might

13   receive a windfall unrelated to its own damage." <u>Porous Media Corp. v. Pall Corp.</u>, 110 F.3d

14   1329, 1335-36 (8th Cir. 1997) (citing <u>Harper House</u>, 889 F.2d at 209 n.8); <u>see also</u> <u>CKE</u>

15   <u>Restaurant v. Jack in the Box, Inc</u>., 494 F.Supp.2d 1139, 1146 (C.D.Cal. 2007) ("The injury

16   in cases involving non-comparative statements 'accrue[] equally to all competitors . . . . Thus

17   [courts] require[] some indication of actual injury and causation to satisfy Lanham Act

18   standing requirements and to ensure a plaintiff's injury was not speculative.'") (quoting

19   <u>McNeilab, Inc. v. American Home Products Corp</u>., 848 F.2d 34, 38 (2d Cir. 1988)).  Further,

20   15 U.S.C. § 1117(a) provides that a monetary award "shall constitute compensation and not

21   a penalty."  <u>Id.</u> at 1336.  Accordingly, based on Plaintiff's actionable non-comparative

22   advertising that is the subject of Defendant Renoir's counterclaim, Defendant Renoir was

23   required to present evidence at trial that demonstrated that he had been personally injured by

24   Plaintiff's non-comparative statements in order to support a compensatory or actual damages

25   award.

26        Defendant Renoir asserts that sufficient evidence was presented to the jury to support

27   the compensatory damages award.  Defendant Renoir states that evidence was presented

28   suggesting that his reputation or goodwill resulting from Plaintiff's conduct was damaged.

1   (Defendant Renoir's Response, p.8).  Notably, "loss of goodwill and injury to business

2   reputation . . . is a compensable form of harm or injury for which damages may be awarded

3   in false advertising cases." (Id.).  To support this position, Defendant Renoir cites the Court

4   to <u>Porous Media Corp. v. Pall Corp.</u>, 173 F.3d 1109, 1122-23 (8th Cir. 1999) ("<u>Porous II</u>").

5   In <u>Porous II</u>, the Eighth Circuit held that the plaintiff corporation produced sufficient

6   evidence of damage to its goodwill to support the jury's monetary damages award on

7   plaintiff's false advertising claim.  <u>Id.</u> at 1122.  Such evidence included testimony at trial

8   describing: (1) the importance of plaintiff's business reputation and the extent to which

9   plaintiff relied on that reputation; (2) how plaintiff's reputation had been damaged by

10  defendant; and (3) the particular types of reputational injuries suffered by plaintiff, including

11  testimony regarding the amount of reputational damage.  <u>Id.</u>

12          The Court agrees with Defendant Renoir that damage to reputation or goodwill is

13  compensable under the Lanham Act; however, in this case Defendant Renoir fell short of

14  introducing sufficient evidence suggesting that his reputation or goodwill had been damaged.

15  Unlike the evidence presented in <u>Porous II</u>, Defendant Renoir did not offer any specific or

16  detailed testimony regarding how his reputation or goodwill had been damaged.  Defendant

17  Renoir did broadly testify that he believed his reputation had been personally damaged by

18  Plaintiff's sale or exhibition of unauthentic or misrepresented works.  However, other than

19  this conclusory statement, he offered no further testimony to support his contention.

20  Importantly, Defendant Renoir stated that to his knowledge, he had <u>not</u> lost any clients as a

21  result of Plaintiff's false advertising.  Finally, the only specific instance of harm identified

22  by Defendant Renoir was his inability to produce a certificate of authenticity at an exhibition

23  in Florida for works that were identified as Renoir-Guino works. (Id.).  However, Defendant

24  Renoir again offered no explanation as to how he was personally damaged as a result of this

25  instance, which apparently did not result in the loss of any clients. (Id.).  In this Court's view

26  something more is required with respect to supporting any type of compensatory damage

27  award under the Lanham Act.

28

The Court also finds unpersuasive Defendant Renoir's argument that damages are available solely because the statements of fact or representations by Plaintiff were literally false. According to Defendant Renoir, because the statements are literally false "damages are available without proof of actual deception or confusion." (Defendant Renoir's Response, p.9). See Cashmere & Camel Hair Mfrs. Institute v. Saks Fifth Ave., 284 F.3d 302, 314 (1st Cir. 2002) ("If the advertisement is literally false, the court may grant relief without considering evidence of consumer reaction. In the absence of such literal falsity, an additional burden is placed upon plaintiff to show that the advertisement . . . conveys a misleading message to the viewing public.") (citations omitted); see also PPX Enterprises, 818 F.2d 266, 272-73 (2d Cir. 1987) (holding that if an advertising statement is actually false, monetary relief can be awarded even without reference to consumer confusion). While a finding of literal falsity does support a presumption of actual confusion among consumers, this presumption does not somehow demonstrate that Defendant Renoir was damaged by such confusion in this case. For instance, in Harper House, another non-comparative false advertising case involving literally false statements, the Ninth Circuit reversed the district court's denial of the Lanham Act defendant's motion for judgment notwithstanding the verdict where the plaintiff "presented no evidence of any injury causally related to the defendant's deception." 889 F.2d at 210. The Ninth Circuit stated that "[i]f, in fact, consumers were deceived, the deception likely had little or no causal connection with any damage [the plaintiff] might have suffered from defendants' advertising . . . ." Id. The instant case is analogous to the circumstances in Harper House, because while Defendant Renoir may have established that the non-comparative statements by Plaintiff were literally false, Defendant Renoir has made no specific showing indicating that he has been damaged by such statements. As a result, there is no basis on which to find that Defendant Renoir has been damaged by Plaintiff's non-comparative statements. Under such circumstances, a compensatory or actual damages award under the Lanham Act must fail.

**(D)    Summary**

1     The Court finds that Defendant Renoir failed to introduce sufficient evidence at trial

2     suggesting he was damaged by Plaintiff's non-comparative commercial statements. As such,

3     the Court will set aside the jury's compensatory damage award. In making this determination,

4     it is important to note that the Court's finding does not impact the injunction imposed or the

5     lost profits award. The absence of evidence of damage does not preclude injunctive relief

6     sought by a commercial competitor or the recovery of the infringing party's profits. <u>See</u>

7     <u>Harper House</u>, 889 F.2d at 210 ("[B]ecause of the possibility that a competitor may suffer

8     future injury, as well as the additional rationale underlying section 43(a) - consumer

9     protection - a competitor need not prove injury when suing to enjoin conduct that violates

10    section 43(a)."); <u>see also</u> <u>International Star</u>, 80 F.3d at 753.

11    **II.    Plaintiff's Motion for Attorneys' Fees and Non-Taxable Costs**

12          Plaintiff moves this Court for attorneys' fees and non-taxable costs pursuant to

13    Fed.R.Civ.P. 54(d) and LRCiv. 54.2. Specifically, Plaintiff seeks to recover $343,464.50

14    in attorneys' fees and $22,106.87 in non-taxable costs. (Dkt.#551). Plaintiff seeks such

15    recovery against Defendant Renoir and the Rima Defendants pursuant to 17 U.S.C. § 505 of

16    the Copyright Act, which provides the following:

17          In any civil action under this title, the court in its discretion may allow the
            recovery of full costs by or against any party other than the United States or
18          an officer thereof. Except as otherwise provided by this title, the court may
            also award a reasonable attorney's fee to the prevailing party as part of the
19          costs.

20          Both Defendant Renoir and the Rima Defendants oppose Plaintiff's request on several

21    bases, including Plaintiff's non-compliance with LRCiv. 54.2. The Court will address that

22    argument first. [4]

23

24    _____

25          [4] The Court previously denied the Rima Defendants' motion to strike Plaintiff's
      motion for attorneys' fees based upon non-compliance with LRCiv. 54.2 finding that the fact
26    that Plaintiff filed its Motion and Memorandum of points and authorities contemporaneously
      on March 23, 2007, did not demonstrate non-compliance under LRCiv.54.2(b). (Dkt.#632).
27    That order did not address any of the other arguments advanced by Defendant Renoir or the
28    Rima Defendants.

1    In general, the memorandum of points and authorities submitted in support of a

2  motion for attorneys' fees must include a discussion of the following matters with

3  corresponding headings in the order listed below: (1) eligibility, (2) entitlement and (3)

4  reasonableness of requested award.  LRCiv. 54.2(c)(1)-(3).  In addition, pursuant to LRCiv.

5  54.2(d), the following documents shall be attached to the memorandum: (1) a statement of

6  consultation, (2) a copy of the fee agreement, (3) a task-based itemized statement of fees and

7  expenses, in chronological order, (4) an affidavit of moving counsel and (5) any other

8  affidavits or evidentiary matter deemed appropriate or required by law.  LRCiv. 54.2(d).

9  These requirements are not advisory, but are mandatory to support an award of attorneys'

10  fees and non-taxable costs.

11    In reviewing Plaintiff's submission, the Court finds material flaws.  First, Plaintiff did

12  not timely submit several aspects of its request to support a motion for attorneys' fees under

13  LRCiv. 54.2.  Plaintiff's March 23, 2007, Memorandum of points and authorities supporting

14  its Motion for attorneys' fees and non-taxable costs did not include a statement of

15  consultation as required under LRCiv. 54.2(d)(1). (Dkt.#551).  Notably, LRCiv. 54.2(d)(1)

16  provides the following:

17       No motion for award of attorneys' fees will be considered unless a separate
         statement of the moving counsel is attached to the supporting memorandum
18       certifying that, after personal consultation and good faith efforts to do so, the
         parties have been unable to satisfactorily resolve all disputed issues relating to
19       attorneys' fees or that the moving counsel has made a good faith effort, but has
         been unable, to arrange such a conference.  The statement of consultation shall
20       set for the date of the consultation, the names of the participating attorneys and
         the specific results or shall describe the efforts made to arrange such
21       conference and explain the reasons why such conference did not occur.

22    It was not until April 5, 2007, that Plaintiff submitted such a statement of consultation

23  in a pleading styled as "Supplemental Memorandum in Support of Application for Attorneys'

24  Fees Under 17 U.S.C. § 505." (Dkt.#576).  Perhaps most troubling is that Plaintiff's

25  Supplemental Memorandum evidences that Plaintiff did not consult or attempt to consult

26  with Defendants prior to filing the March 23, 2007 Memorandum in support of its Motion

27  for attorneys' fees.  Rather, it appears that March 30, 2007, one week after the filing of its

28  Memorandum, is the first time Plaintiff attempted to discuss its attorneys' fees requests with

1  the other Parties.  (Plaintiff's Supplemental Memorandum, Exhibit 1).  Such after the fact
2  communication or consultation is clearly contrary to the both the letter and the spirit of the
3  Rule which requires the statement of consultation to be attached to the supporting
4  memorandum certifying that a good faith effort was made to resolve the disputed issues.

5         Second, Plaintiff's memorandum is also deficient in that Plaintiff's itemized statement
6  of attorneys' fees and related non-taxable costs is not in chronological order as is required
7  under LRCiv. 54.2(e)(1).  Plaintiff submits 32 pages of time records that jump from month
8  and year throughout, which, as noted by Defendant Renoir, imposes an additional burden in
9  validating or reviewing such entries.

10        In addition to the procedure flaws noted above, the Court also notes that Defendants
11  have filed appeals with the Ninth Circuit challenging the merits of Plaintiff's copyright
12  infringement judgment.  (Dkt.#560, 570).  Importantly, as discussed at length in Judge
13  Carroll's January 30, 2006 order, Plaintiff's copyright infringement claims raise questions
14  as to  the current status of Ninth Circuit copyright law. (Dkt.#350).   Judge Carroll stated
15  "that there are substantial grounds for difference of opinion regarding the existence of
16  copyright protection for the sculptures" and certified the matter for interlocutory appeal (Id.
17  p.12, 13).   While the Ninth Circuit declined to entertain the issue presented upon
18  interlocutory appeal, the Ninth Circuit will be given such an opportunity with the benefit of
19  Defendants' current appeals.  The outcome of Defendants' appeals will bear significant light
20  upon whether Plaintiff is entitled to attorneys' fees as the "prevailing party" under 17 U.S.C.
21  § 505.

22        Thus, the Court will deny without prejudice Plaintiff's Motion for attorneys' fees.
23  The Court finds that Plaintiff's Memorandum of Points and Authorities is procedurally
24  deficient pursuant to LRCiv. 54.2.  In addition, considering the debatable issues raised on
25  appeal by Defendants, the Ninth Circuit's decision will provide guidance as to whether
26  Plaintiff is entitled to attorneys' fees based upon its copyright infringement claims.

27  **III.    Defendants' Motions for Sanctions**

28         **A.    Background**

1    Defendants Hernandez and Renoir, and the Rima Defendants, seek sanctions against

2    Plaintiff and Plaintiff's counsel, Richard Morris.  These Defendants seek sanctions because

3    of alleged misconduct during discovery with respect to the depositions of Gilles Guino and

4    Michel Guino that were scheduled to take place in Paris, France on May 18 and 19, 2005.

5    Defendants previously asserted these motions on June 1, 2005, and June 17, 2005,

6    respectively.  (Dkt.#234, 252).  On August 3, 2005, Judge Carroll held a hearing to address

7    the motions, and ultimately denied the motions "without prejudice  to the reurguing at the

8    close of proceedings in this case."  (Dkt.#277).  After the Court's March 16, 2007 judgment,

9    the Rima Defendants, pursuant to Judge Carroll's leave, reasserted their motion on March

10   28, 2007, and Defendants Hernandez and Renoir reasserted their motion on April 6, 2007.

11   Defendants contend that sanctions are appropriate against Plaintiff and Plaintiff's

12   counsel because of improper and unfounded interference with the stipulated and scheduled

13   depositions of Gilles and Michel Guino in Paris, France.  That interference did not develop

14   until the eve of the depositions, after Defendants' counsel - and at Defendants' expense, a

15   translator, videographer, and stenographer - had already traveled to Paris.  According to

16   Defendants, an issue regarding the propriety of the depositions did not arise until the night

17   before the depositions, when Plaintiff's French counsel, Marie Rueff, sent a letter, in French,

18   demanding compliance with the Hague Convention's provisions on discovery.  (Defendant

19   Renoir's Motion, Dkt.#580, Exhibit G to Paul Steiner Affidavit).    Upon receipt of Ms.

20   Rueff's letter, Defendant Hernandez and Renoir's counsel, Mr. Steiner, sent a letter to Mr.

21   Morris  disputing  Ms.  Rueff's  reliance  on  the  Hague  Convention.    (Id.,  Exhibit  I).

22   Defendants' counsel, Mr. Guino, and Plaintiff's French counsel then met for the depositions

23   as previously scheduled, put the dispute on record, and the depositions went no further.

24   Defendants then moved for sanctions against Plaintiff and Plaintiff's counsel, and on August

25   3, 2005, Judge Carroll held oral argument and decided, "given all th[e] issues . . . present[ed],

26   . . . to deny . . . without prejudice to reurging . . . at the time at the end of the proceedings as

27   to who should or shouldn't be responsible for th[ese] matters."  (Dkt.#295, p. 20, ll. 20-23).

28

1    In September 2005, after agreement between the Parties, Gilles and Michel Guino were

2    deposed in London, England.

3           Plaintiff opposes any notion of misconduct or any basis for sanctions.  According to

4    Plaintiff, the objection based on Defendants' failure to properly execute procedural

5    formalities required by the Hague Convention prior to attempting to depose Gilles and

6    Michel Guino, was well founded and necessary under the circumstances.  Plaintiff asserts

7    that such formalities for executing depositions on foreign soil are well known and easily

8    accessible, and that Defendants should have accounted for them.  Plaintiff asserts that to

9    allow the depositions to go forward without compliance with the Hague Convention carried

10   significant consequences, including criminal penalties, for Plaintiff as well as Plaintiff's

11   French counsel, Ms. Rueff.  Lastly, Plaintiff contends that Defendants Hernandez and

12   Renoir's renewed motion for sanctions before this Court is untimely and should be denied

13   on that basis.

14          **B.    Analysis**

15                  **(1)    Propriety of this Court's Jurisdiction to Consider Defendant**
                            **Hernandez and Renoir's Motion.**
16
17          With respect to Plaintiff's opposition to Defendants Hernandez and Renoir's Motion

     for sanctions based upon timeliness, the Court is not persuaded by Plaintiff's argument.
18
     First, as mentioned above, Judge Carroll expressly granted leave to Defendant Renoir and
19
     the other Defendants to reurge the instant Motion "at the close of proceedings in this case."
20
     (Dkt.#277).  As such, Plaintiff's argument that any such motion should or had to have been
21
     filed at the close of the trial is misplaced.  In addition, Plaintiff's argument that Defendant
22
     Renoir's Motion is untimely under Rule 59 and Rule 60 of the Federal Rules of Civil
23
     Procedure is also not compelling.  Notably, Defendant Renoir does not seek to alter or amend
24
     the Court's judgment under Rule 59(e) or seek relief from judgment under Rule 60(b).
25
     Rather, with the leave previously granted by Judge Carroll, Defendant Renoir seeks monetary
26
     sanctions under the authority of Fed.R.Civ.P. 37 against Plaintiff and Plaintiff's counsel.
27
     Also, the fact that Defendant Renoir filed a notice of appeal prior to the instant motion does
28

not somehow deprive this Court of jurisdiction to consider the motion.  See <u>Masalosalo by</u>
<u>Masalosalo v. Stonewall Ins. Co.</u>, 718 F.2d 955, 957 (9th Cir. 1983) (holding that a district
court retains jurisdiction to award attorneys fees during the pendency of an appeal); <u>Alward</u>
<u>v. Burrelle's Information Services</u>, 2001 WL 1708779, at *7 - *11 (D.Ariz. 2001)
(evaluating, awarding, and denying certain motions for sanctions filed by the parties where
notice of appeal had been filed previously, based on the district court's retained jurisdiction
to award attorneys fees during the pendency of the appeal with respect to matters unrelated
to the appeal); <u>see also</u> <u>Fieldturf, Inc. v. Southwest Recreational Industries</u>, 212 F.R.D. 341,
342-43 (E.D.Ky. 2003) (holding that the plaintiff's filing of notice of appeal did not divest
the district court of jurisdiction to consider the defendant's motion for discovery sanctions).
Thus, the Court finds that Defendant Renoir's Motion for sanctions pursuant to Fed.R.Civ.P.
37 is within this Court's jurisdiction to consider.

### (2)   Sanctionable Conduct Analysis

Rule 37(d) of the Federal Rules of Civil Procedure provides in pertinent part:

> If a party or an officer, director, or managing agent of a party . . . fails (1) to
> appear before the officer who is to take the deposition, after being served with
> a proper notice . . . the court in which the action is pending on motion may
> make such orders in regard to the failure as are just, and among others it may
> take any action authorized under subparagraphs (A), (B), and (C) of
> subdivision (b)(2) of this rule. . . . In lieu of any order or in addition thereto,
> the court shall require the party failing to act or the attorney advising that party
> or both to pay the reasonable expenses, including attorney's fees, caused by
> the failure unless the court finds that the failure was substantially justified or
> that other circumstances make an award of expenses unjust.

In the instant case, the depositions that were scheduled in Paris for May 18 and 19,
2005, did not go forward because of Plaintiff's 11th hour assertion regarding the applicability
of the Hague Convention to Defendants efforts to depose Gilles and Michel Guino.  As such,
the Court is faced with whether Plaintiff and Plaintiff's counsel's conduct warrants the
imposition of sanctions.

As an initial matter, the Court does not find compelling Plaintiff's substantial reliance
on the Hague Convention with respect to preventing or stopping the execution of the
depositions in Paris, France.  The Court does not see the need to make a specific finding as

1   to whether Plaintiff's reliance on the Hague Convention and reading of Societe Nationale

2   Industrielle Aerospatiale v. U.S. District Court, 482 U.S. 522 (1987), is meritorious.  The

3   Court's primary concern is the timing of Plaintiff's counsel's objection to these depositions.

4   Notably, it was Plaintiff's counsel who advised Defendants that the Guinos, as

5   representatives or directors of Plaintiff, would not be available for any type of deposition in

6   the United States, despite the fact that Plaintiff initiated the lawsuit in this District of the

7   United States.  (Rima Defendants' Motion, Exhibit 2); see Slade v. Transatlantic Financing

8   Corp., 21 F.R.D. 146, 146-47 (S.D.N.Y. 1957) ("The rule is well settled that a non-resident

9   plaintiff who chooses this forum makes himself available to examination here in the absence

10  of a showing of unreasonable hardship or the presence of special circumstances.") (citations

11  omitted).  In addition, it was Plaintiff's counsel who proposed the dates in May 2005 for the

12  subject depositions. (Id., Exhibit 3).  The dates were finalized by the Parties' stipulation

13  through correspondence in early March 2005, and were ultimately noticed on April 11, and

14  May 2, 2005, to which Plaintiff did not object. (Id. Exhibits 4-5).  Despite these arrangements

15  and exchange of prior written discovery between the Parties, there was never any discussion

16  or implication that the depositions could be stalled or prevented by application of the Hague

17  Convention.  In fact, it was not until Defendants' counsel and associated personnel arrived

18  in Paris for the depositions that Plaintiff's French counsel, Ms. Rueff, who is not counsel in

19  the instant case, asserted an objection based on Defendants' non-compliance with the Hague

20  Convention. (Id. Exhibit 8).  Such timing begs the question of why this issue was not raised

21  previously.  In the Court's review of the record, the answer to that question is that the

22  relevance and applicability of the Hague Convention was never at issue between the

23  attorneys of record or Parties in this case, until the very eve of the depositions.  Undoubtedly,

24  this issue should have been raised and addressed much earlier than on the eve of the

25  deposition, which had been discussed and stipulated to months prior to the actual deposition

26  dates.  Had Plaintiff's counsel raised the issue earlier, such as in a timely motion for a

27  protective order, Defendants probably would not have incurred the fees and costs associated

28  with their travel to Paris for the depositions.  Also, had the issue been raised earlier, and

1    assuming that the Parties were not able to resolve the issue, the Court would then have

2    evaluated the relevance and applicability of the Hague Convention.  While some minor

3    blame may be laid on Defendants for failing to ensure the absence of any issues regarding

4    the depositions in Paris, France, the majority of the blame lies with Plaintiff and Plaintiff's

5    counsel.  It is Plaintiff, a French Trust, that invoked this Court's jurisdiction by bringing this

6    lawsuit in the United States.  Defendants were not obligated to depose the Guinos in France,

7    and such an arrangement was made based on Plaintiff's counsel's recommendation, and for

8    the convenience of the Guinos.  The timing of Plaintiff's objection unnecessarily caused a

9    waste of time and resources.

10       Under these circumstances, the Court finds that sanctions are appropriate pursuant to

11   the Court's authority under Fed.R.Civ.P. 37.  Thus, the Court will impose sanctions on

12   Plaintiff and Plaintiff's counsel in the form of 85% of Defendants' costs, including travel and

13   lodging, and the fees incurred for the translator, videographer, and stenographer, associated

14   with the scheduled depositions on May 18 and 19, 2005.  Plaintiff's counsel shall bear 55%

15   of the costs, and Plaintiff shall bear 30% of the costs.  See Lew v. Kona Hosp., 754 F.2d

16   1420, 1425 (9th Cir. 1985) ("The district court has great latitude in imposing sanctions under

17   Fed.R.Civ.P. 37.").

18   **IV.    The Rima Defendants' Motion for Attorneys' Fees**

19       On March 30, 2007, the Rima Defendants filed their instant Motion for attorneys' fees

20   pursuant to LRCiv.54.2 and under the broader authority of the Lanham Act, 15 U.S.C. §

21   1117(a).  The Rima Defendants contend that they are entitled to their attorneys' fees because

22   Plaintiff's Lanham Act claim asserted against them was groundless and unreasonable.  The

23   Rima Defendants seek to recover the fees of  Phil Fleming of the law firm of Yen Pilch

24   Komodina & Fleming, P.C. (the "Yen law firm") and Joshua Kaufman of the law firm of

25   Venable Baetjer Howard & Civilette, LLP (the "Venable law firm").

26       15 U.S.C. § 1117(a) provides that for causes of action asserted under the Lanham Act,

27   "[t]he court in exceptional cases may award reasonable fees to the prevailing party."  The

28   Ninth Circuit has interpreted and applied "exceptional circumstances" to mean where "the

1    case is *either* 'groundless, unreasonable, vexatious, *or* pursued in bad faith.'" <u>Cairns v.</u>
2    <u>Franklin Mint Co.</u>, 292 F.3d 1139, 1156 (9th Cir. 2002) (emphasis in original) (citations
3    omitted).   In support of the Rima Defendants' argument as to entitlement to attorneys' fees
4    under § 1117(a), they rely primarily on the fact that this Court dismissed Plaintiff's Lanham
5    Act claim upon the Rima Defendants' Fed.R.Civ.P. 50(a) motion at trial before the claim
6    ever reached the jury.  The Rima Defendants' argue that this fact, created by the complete
7    lack of evidence introduced at trial by Plaintiff, evidences that Plaintiff's Lanham Act claim
8    was groundless and unreasonable.   The Rima Defendants cite the Court to <u>Designing Health,</u>
9    <u>Inc. v. Erasmus</u>, 2003 U.S. Dist. LEXIS 26512, at *58-65 (C.D. Cal. 2003), where the district
10   court awarded reasonable attorneys fees to the prevailing Lanham Act defendant under §
11   1117(a) based, in part, upon the district's dismissal of plaintiff's Lanham Act claim upon
12   Rule 50(a) motion due to lack of evidentiary support.  The district court stated that such fees
13   were appropriate due to the fact that "[p]laintiffs unreasonably and vexatiously multiplied
14   the proceedings by continuing to maintain these baseless grounds for their Lanham Act
15   claim." <u>Id.</u>, at * 65.

16       In response to the Rima Defendants' argument regarding entitlement, Plaintiff argues
17   that this case does not fall within the umbrella of an "exceptional case" under 15 U.S.C. §
18   1117(a).   Plaintiff asserts that the Rima Defendants make no meaningful attempt to
19   demonstrate that this case is an "exceptional case," as evidenced by the lack of cited
20   authority.   In addition, Plaintiff argues that the absence of any basis for such fees is
21   evidenced by the fact that the Rima Defendants never moved prior to trial for summary
22   judgment on Plaintiff's Lanham Act claim, thus impliedly evidencing that the claim had a
23   basis in the record.  Additionally, Plaintiff contends that the Rima Defendants have made a
24   false statement to the Court regarding certain evidence introduced at trial, thus warranting
25   a denial of the Rima Defendants' instant Motion.

26       In considering the arguments advanced, the Court finds that the Rima Defendants have
27   demonstrated that this is an "exceptional case" under 15 U.S.C. § 1117(a), warranting an
28   award of attorneys' fees to the Rima Defendants with respect to Plaintiff's Lanham Act

1   claim.  As determined by the Court at trial, Plaintiff introduced virtually no evidence to

2   support this claim, but rather focused on the damages issue associated with its accompanying

3   copyright infringement claims.  (October 27, 2006 Transcript, Dkt.#540, pp.20-22, ll.12-1).

4   Also, the fact that the Rima Defendants' did not move for summary judgment on this claim

5   sooner does not somehow excuse the groundless and unreasonable nature of Plaintiff's claim.

6   The focus of Plaintiff's case at trial was its copyright infringement claim, which it was

7   successful on with respect to liability at the summary judgment stage.  However, this focus

8   on the copyright infringement claim undoubtedly caused the Rima Defendants unnecessary

9   time and resources in preparation of a defense of Plaintiff's Lanham Act claims.  Under these

10  circumstances, the Court finds that an attorney fee award is justified, as the Rima Defendants

11  are the prevailing party in an "exceptional [Lanham Act] case[]."  See Cairns v. Franklin

12  Mint Co., 115 F.Supp.2d 1185, 1189 (C.D.Cal. 2000) (awarding attorneys' fees to prevailing

13  Lanham Act defendant where "[a]t no time . . . did plaintiffs present evidence to cast doubt

14  on the veracity of the advertising statements . . . . [and] [t]he claim . . . should have either not

15  [been] brought . . . in the first instance, or voluntarily dismissed . . . when it was clear that

16  there was no evidence to support it.").

17       Lastly, contrary to Plaintiff's argument,  the Court does not find that the Rima

18  Defendants' statement in its Memorandum in support of its attorneys' fees request - that the

19  Rima Defendants received an assurance from the copyright office that they were not violating

20  copyright law - to be an unfounded misstatement.  As stated by the Rima Defendants, Tracy

21  Penwell expressly testified at trial that she spoke to the copyright office before purchasing

22  certain copies of works at issue in this litigation.  (Rima Defendants' Reply, p.3, Exhibit 1).

23       In finding that the Rima Defendants' are entitled to attorneys' fees as the prevailing

24  party in this "exceptional case" pursuant to 15 U.S.C. § 1117(a), the Court must determine

25  an appropriate attorneys' fees award.   The Rima Defendants' Memorandum and

26  accompanying documents demonstrate that the Rima Defendants seek a one-third allocation

27  of the total amount of attorneys' fees expended in this matter, representing the time

28  attributable  to the defense of Plaintiff's Lanham Act claim.  As an initial matter, the Court

employs the lodestar method in determining an appropriate award, which is based on the reasonable number of hours expended multiplied by a reasonable hourly rate.  See, e.g., Intel Corp. v. Terabyte Int'l, Inc., 6 F.3d 614, 622 (9th Cir. 1993) ("When [the court] sets a fee, [it] . . . must first determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate.").  In calculating the lodestar, the Court also considers some of the factors listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67 (9th Cir. 1975), *cert denied*, 425 U.S. 951 (1976).  These factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) time limitations imposed by the client or the circumstances; (7) the amount involved and the results obtained; (8) the experience, reputation, and ability of the attorneys; (9) the nature and length of the professional relationship with the client; and (10) awards in similar cases.  Id. at 70.  "The Court need not consider all . . . factors, but only those called into question by the case at hand and necessary to support the reasonableness of the fee award."  Kessler v. Assocs. Fin. Servs. Co. of Hawaii, Inc., 639 F.2d 498, 500 n.1 (9th Cir. 1981).  To the extent that any of these factors are not considered in the calculation of the lodestar, they may be considered in determining whether a fee award should be adjusted upward or downward, once the lodestar has been calculated. Chalmers v. City of Los Angeles, 796 F.2d 1205, 1212 (9th Cir. 1986), *reh'g denied, amended on other grounds*, 808 F.2d 1373 (9th Cir. 1987).

In looking at the hourly rates submitted by Mr. Fleming and Mr. Kaufman, the Court finds both rates to be reasonable.[5]  Mr. Fleming submits an hourly rate of $200 per hour, which is reasonable based on Mr. Fleming's experience, the prevailing market rate, and the novelty of certain issues presented.  Morever, Mr. Kaufman submits an hourly rate of $300 per hour, which is also reasonable in taking into account his thirty plus years of practice in

---

[5] In determining an appropriate rate, the Court must consider the prevailing rate in the community for similar work performed by attorneys of comparable skill, experience, and reputation.  Chalmers, 796 F.2d at 1210.

1   the area of intellectual property law, the prevailing market rate, and the novelty of certain

2   issues presented.  Notably, Mr. Kaufman's affidavit omits any specific discussion of the

3   other attorneys' or paralegals rates at the Venable law firm that performed work on this case.

4   However, a review of the itemized statement of fees and costs submitted evidences that

5   certain other attorneys and paralegals at the Venable law firm worked on this case.  Because

6   of the absence of any discussion as to the reasonableness of these other attorneys' fees, the

7   Court will adjust their rates down to a uniform rate of $125.

8       In addition, the Court finds that the number of hours reasonably expended in

9   defending Plaintiff's Lanham Act is reasonably presented by the Rima Defendants.  In

10  making this determination, the Court takes into account Plaintiff's objections. For instance,

11  Plaintiff contends that the bills submitted by the Rima Defendants fail to meet the

12  requirements for any type of award in this case because "[the fees] lack any connection to

13  Lanham Act defense work." (Plaintiff's Opposition, p.10).  Specifically, Plaintiff contends

14  that the Rima Defendants' Memorandum and associated affidavits "fail[] to identify the hours

15  spent defending the Lanham Act claim." (Id.).  However, the Court finds no flaw in the one-

16  third allocation estimated by the Rima Defendants in defending Plaintiff's Lanham Act

17  claim.  Because of the assertion of Plaintiff's copyright infringement and conversion claims

18  there was undoubtedly some overlap making an exact estimation difficult.  Moreover, the

19  itemized statements submitted evidence that significant work was performed on defending

20  Plaintiff's Lanham Act claim.

21      Accordingly, in employing the lodestar method, the Rima Defendants on behalf of Mr.

22  Fleming of the Yen law firm are entitled to fees of $111,422 (557.11 hours * $200 per hour).

23  In addition, on behalf of Mr. Kaufman and the Venable law firm, the Rima Defendants are

24  entitled to fees of $55,600 (185.33 hours (556 hours * 1/3) * $300 per hour [Mr. Kaufman])

25  and $18,600 (148.8 hours (446.4 * 1/3) * $125 per hour [other attorneys and paralegals]) in

26  attorneys' fees.

27      The Court also will address Plaintiff's remaining objections to the Rima Defendants'

28  request.  For instance,  with respect to the attorneys' fees sought by the Venable law firm,

1   Plaintiff argues that Mr. Kaufman failed to explain the "billing judgment" associated with

2   the fee request, as well as failed to provide an adequate description of the services rendered

3   with respect to the Lanham Act claim pursuant to LRCiv. 54.2(e)(2).  In reviewing Plaintiff's

4   objection, the Court finds that the argument is valid.  While LRCiv. 54.2(e)(2)  is sensitive

5   to disclosures touching on the attorney-client privilege and work product doctrine, the Rule

6   requires the moving party to "furnish an adequate nonprivileged description of the services

7   in question."  For example, a number of the entries are conclusory and prevent a sufficient

8   review by this Court.  For instance, multiple entries indicate only "work on" or "look at"

9   Plaintiff's Lanham Act claim.  (Mr. Kaufman Affidavit, Exhibit 2, pp. 58, 63).  A review of

10  the invoices as a whole indicates that there are multiple such conclusory statements.  (Id.

11  Exhibit 2).  Under such circumstances, the Court finds that a reduction in the requested fees

12  is appropriate.  See LRCiv. 54.2(e)(2) ("If the time descriptions are incomplete, or is such

13  descriptions fail to adequately describe the service rendered, the court may reduce the award

14  accordingly.").  Thus, the Court will adjust downward the requested fee by 10%.  Thus, the

15  lodestar fee on behalf of Venable law firm of $74,200 will be reduced to $66,780.

16        Plaintiff also argues that the submission by Mr. Fleming and the Yen law firm is

17  deficient in several respects.  For instance, Plaintiff contends that Mr. Fleming seeks fees for

18  work on an unrelated lawsuit involving Victor Ostrovsky, and that Mr. Fleming failed to

19  adequately explain the  time devoted to aspects of Plaintiff's Lanham Act claim.  However,

20  Plaintiff's argument as to the reference to Victor Ostrovsky is not compelling.  Notably, the

21  full reference states "review email clients re suing Victor in state court." (Mr. Fleming

22  Affidavit, Exhibit 2, p. 15).  Importantly, Mr. Ostrovsky was listed as a witness in the instant

23  case.  In addition, as addressed above, Plaintiff's argument as to an over-allocation of the

24  fees to the Lanham Act claim is unpersuasive.  Given that the Lanham Act claim was one of

25  the major claims asserted by Plaintiff, the Court finds that the one-third percentage allocation

26  is reasonable.

27  **V.        Defendant Renoir and Hernandez's Motion for Attorneys' Fees**

28

1    Defendants Hernandez and Renoir seek to recover their attorneys' fees incurred in this

2    matter on multiple bases.  Defendant Hernandez, the mother of Defendant Renoir, seeks to

3    recover attorneys' fees as the "prevailing party" in Plaintiff's copyright infringement claims

4    against her pursuant to 17 U.S.C. § 505.   In addition, she seeks such fees as the successful

5    defending party in response to Plaintiff's Lanham Act claim against her pursuant to 15

6    U.S.C. § 1117(a).  Defendant Renoir seeks attorneys' fees as both the prevailing defendant

7    in Plaintiff's Lanham Act claim and the prevailing plaintiff in his false advertising Lanham

8    Act counterclaim against Plaintiff.  Defendants Hernandez and Renoir also request, pursuant

9    to 28 U.S.C. § 1927, that any excess fees not charged to Plaintiff be charged to Plaintiff's

10    counsel, Richard Morris and the Morris Law Firm, in the form of sanctions.  In opposition,

11    Plaintiff firmly opposes any award of attorneys fees under the authority cited by Defendants

12    Hernandez and Renoir, and claims that it is Defendants' counsel that has engaged in

13    sanctionable conduct in this litigation.  The Court will first address the issues of eligibility

14    and entitlement.

15    **A.    Defendants Hernandez and Renoir as Lanham Act Defendants**

16    For similar reasons explained above, Plaintiff's  Lanham Act claim supports such a

17    fee award because of the "exceptional" circumstances created by Plaintiff's groundless and

18    unreasonable Lanham Act claim against Defendants Hernandez and Renoir.  15 U.S.C. §

19    1117(a).   For instance, with respect to Defendant Hernandez, Plaintiff expressly

20    acknowledged at trial, upon Defendant Hernandez's motion for directed verdict,  that there

21    was no evidence introduced against her.  (Transcript 10/27/06, Dkt.#540, p12, ll.18-19).

22    Such a concession at the trial itself begs the question as to why Defendant Hernandez was

23    named and included in such a claim in the first place.  Second, as to Defendant Renoir,

24    Plaintiff made the same minimal effort to assert any relevant evidence against Defendant

25    Renoir suggesting that he violated the Lanham Act.  Rather, in keeping with its theme of

26    focusing on the copyright damages, Plaintiff afforded no time or effort to suggest that

27    Defendant Renoir could be held accountable under Plaintiff's Lanham Act theory. While

28    Judge Carroll denied Defendants Hernandez and Renoir's motion for judgment on the

pleadings on this claim on November 10, 2005, the Court does not find that the previous finding on Fed.R.Civ.P. 12(c) review  excuses Plaintiff's failure to introduce any evidence to support such a claim at trial, which undoubtedly caused a waste of time and resources by these Defendants in preparation for trial.  In such situations, where the claim is groundless or unreasonable, an award of fees is appropriate because it qualifies as an "exceptional case." Cairns, 292 F.3d at 1156.  Moreover, Plaintiff's arguments that the Lanham Act claim was necessary "as an option" or "just in case the need arose,"and to avoid legal malpractice, are not persuasive to justify the assertion of the Lanham Act claim. (Plaintiff's Response, Dkt.#585).   Plaintiff's decision to assert such a claim as an option to the copyright infringement claims does not excuse the subsequent abandonment of the Lanham Act claim at trial after significant expense by the opposing parties.  Entertainment Research Group, Inc. v. Genesis Creative Group, Inc., 122 F.3d 1211,1229 (9th Cir. 1997) (awarding attorneys fees and rejecting non-moving party's argument that to not pursue such a claim would have been malpractice where there were was no evidence to support the claim despite three years of litigation).  Thus, under such circumstances, the Court finds that Defendants Hernandez and Renoir are entitled to a portion of their attorneys' fees as prevailing defendants in this "exceptional" Lanham Act case.

### B.    Defendant Hernandez as Copyright Infringement Plaintiff

Similarly, the Court finds that Defendant Hernandez is entitled to fees incurred in defending against Plaintiff's copyright infringement claim against her pursuant to 17 U.S.C. § 505.  As acknowledged by Plaintiff in its papers, "Plaintiff opted not to press for a trial verdict" against Defendant Hernandez. (Plaintiff's Response, Dkt.#585, p.4).  However, Plaintiff's apparent decision to alleviate Defendant Hernandez from copyright liability does not somehow excuse the time and resources needed to prepare for such claims at trial by Defendant Hernandez.  Clearly, Plaintiff had the opportunity to release Defendant Hernandez long before any trial and well before the Court directed a verdict in her favor.  Moreover, relevant factors identified by the Supreme Court in Fogerty v. Fantasy, Inc., and its progeny, support an attorneys' fee award in Defendant Hernandez's favor in defending against

1    Plaintiff's copyright infringement claims. 510 U.S. 517, 535 n. 19 (1994) (recognizing

2    factors of: (1) frivolousness; (2) motivation; (3) objective unreasonableness of losing party's

3    factual and legal basis; and (4) the need, in particular circumstances, to advance

4    considerations of compensation and deterrence).

5         The degree of success obtained by Defendant Hernandez was significant as she was

6    dismissed from this case based on the Court's Rule 50(a) order, and in part, on Plaintiff's

7    apparent decision to "opt[] not to press a trial verdict . . ." against her. (Plaintiff's Response,

8    p.4). Fantasy, Inc. v. Fogerty, 94 F.3d 553, 559 (9th Cir. 1996) (identifying "degree of

9    success obtained" as a relevant factor to be used when exercising "equitable discretion").

10    In addition, the "frivolousness" of Plaintiff's copyright infringement claims against

11   Defendant Hernandez is also evidenced by Plaintiff's failure to include Defendant Hernandez

12   as part of its case at trial, thus resulting in the Court's directed verdict. The "motivation"

13   behind Plaintiff's suit against Defendant Hernandez also supports an award of fees in her

14   favor.  As evidenced by Plaintiff's decision not to pursue any infringement claims against

15   Defendant Hernandez at trial, it appears that she, as the mother of Defendant Renoir, was

16   named as a Defendant for leverage purposes.  That such intent carried all the way through

17   to a directed verdict at trial after more than three years of litigation is not justified. See

18   Bridgeport Music, Inc. v. Diamond Time, Ltd., 371 F.3d 883, 896 (6th Cir. 2004) (affirming

19   district court's attorney fee award under 15 U.S.C. § 1117 and stating "the district court

20   certainly had a basis to infer that the litigation was undertaken and prosecuted in a fashion

21   that would multiply the fees and encourage nuisance settlement.").   The objective

22   unreasonableness of Plaintiff's claims against Defendant Hernandez also justifies an award

23   of fees.  Plaintiff's copyright infringement claim, while surviving challenge by Defendant

24   Hernandez on Fed.R.Civ.P. 12(c) review, appears to have been abandoned at trial. While the

25   claim may have been reasonable at one point in time, Plaintiff completely failed to pursue

26   the claim at trial. Under such circumstances, a finding of objective unreasonableness is

27   warranted. See Entertainment Research, 122 F.3d at 1229 ("[B]ecause the evidence in the

28   record reveals that [the plaintiff] never had any evidence to support its . . . claims, the district

1    court properly found that it was objectively unreasonable for [the plaintiff] to have

2    maintained these claims.").  Lastly, considerations of compensation and deterrence also

3    support an award of attorneys' fees.  Defendant Hernandez was forced to expend a

4    significant amount of resources to defend against claims that were either unsupported or

5    simply abandoned.  It would be unfair for Defendant Hernandez to bear the brunt of such

6    fees.  In addition, an award of fees deters the inclusion of defendants for leverage purposes

7    only.  See Baker v. Urban Outfitters, Inc., 431 F.Supp.2d 351, 359 (S.D.N.Y. 2006) ("[A]n

8    award of costs and fees is crucial . . . so as to deter this plaintiff, and other similarly situated

9    plaintiffs, from bringing unreasonable claims based on cost/benefit analysis that tells such

10   plaintiffs that they can score big if they win and that there will be no adverse consequences

11   if they lose.").

12        Thus, in view of this Court's discretion under 17 U.S.C. § 505, and in reviewing the

13   Fogerty factors,  the Court finds that Defendant Hernandez is entitled to her attorneys' fees

14   in defending against Plaintiff's copyright infringement claim..

15        **C.    Defendant Renoir as Lanham Act Plaintiff**

16        The Court also finds that Defendant Renoir is entitled to recover his attorneys' fees

17   attributable to the prosecution of his counterclaim of false advertising under the Lanham Act

18   against Plaintiff.  The Court finds that the facts of this case support the finding that this is an

19   "exceptional case" for purposes of 15 U.S.C. 1117(a).   For infringement purposes, an

20   "exceptional case" arises when the "infringement is malicious, fraudulent, deliberate or

21   willful."   Lindy Pen, 982 F.2d at 1409.  The Court finds that evidence of fraudulent,

22   deliberate, and willful infringement is present in this case, and thus supports such an award.

23   Notably, the jury, on special interrogatory, determined that Plaintiff "willfully acted in a

24   manner to deceive the public by engaging in false advertising in violation of the Lanham

25   Act." (Dkt.#514).  While the Court, as stated above, finds that Defendant Renoir failed to

26   introduce sufficient evidence that he was personally injured as a competitor with Plaintiff,

27   Defendant Renoir is still entitled to the injunctive and lost profits relief imposed.  In addition,

28   the lack of actual injury to Defendant Renoir does not make Plaintiff's conduct, which

1   includes falsely misrepresenting the authenticity of certain Renoir-Guino works and falsely

2   altering certain works, to be any less deliberate or willful.  Under such circumstances,

3   Defendant Renoir, the prevailing party on the false advertising counterclaim, qualifies to

4   recover certain fees attributable to the prosecution of his false advertising counterclaim.

5       **D.    Reasonable Attorneys' Fees**

6       With respect to the reasonableness of the fees requested by Defendants Hernandez and

7   Renoir, the Court begins with a defect in a certain aspect of the fee application submitted by

8   Defendants Hernandez and Renoir.  These Defendants seek a total of $28,247.53 for services

9   rendered at the outset of this litigation by Larry Washor of the law firm of Washor and

10  Associates. (Affidavit of Jean Emmanuel Renoir, Dkt.#556).  However, in an apparent

11  attempt to comply with LRCiv. 54.2(d)(4), Defendant Renoir himself has submitted an

12  affidavit explaining the services rendered and the fees incurred by him and Defendant

13  Hernandez for Mr. Washor's services.  Notably, LRCiv. 54.2(d) and (d)(4) provide in

14  pertinent part:

15      [T]he following documentation shall be attached to each memorandum of
        points and authorities filed in support of a motion for attorneys' fees and
16      related non-taxable expenses:

17          (4)    The supporting memorandum must be accompanied by an affidavit of
                   moving counsel which, at a minimum, sets forth the following:
18
                   . . .
19
                   (B)    A brief discussion of the terms of the written or oral fee
20                        agreement, if any . . . . As appropriate, this section also should
                          discuss the method by which the customary charges were
21                        established, the comparable prevailing community rate or other
                          indicia of value of the services rendered for each attorney for
22                        whom fees are claimed.

23                 (C)    In this section the affiant must state that the affiant has reviewed
                          and has approved the time and charges set forth in the task-
24                        based itemized statement and that the time spent and expenses
                          incurred were reasonable and necessary under the
25                        circumstances.  This section also must demonstrate that the
                          affiant exercised "billing judgment."
26
27      This affidavit is not submitted by Mr. Washor, who billed the legal services on behalf

28  of these Defendants, but rather is submitted by Defendant Renoir himself, which runs afoul

1 of LRCiv. 54.2(d), which calls for such an affidavit from "moving counsel."  In addition, it

2 is Defendant Renoir who gives his own estimate as to the amount of time allocated for Mr.

3 Washor's defense of Plaintiff's claims against he and Defendant Hernandez.  Defendant

4 Renoir also gives no explanation, which he would not likely be qualified to render, as to the

5 prevailing market rate of the services rendered by Mr. Washor.  Finally, Defendant Renoir

6 gives no explanation or foundation as to how he would be qualified to exercise the required

7 "billing judgment" to decipher the fees.  Because such elements are requirements under

8 LRCiv. 54.2, the Court will deny Defendants Hernandez and Renoir's request for attorneys'

9 fees incurred by Mr. Washor and the law firm of Washor and Associates.

10 Next, the Court, as discussed above, must use the lodestar method to first determine

11 the appropriate amount of attorneys' fees requested for the representation of Ray Harris and

12 the law firm of Fennemore Craig ("Fennemore Craig"), and David Paul Steiner and the law

13 firm of David Steiner & Associates (the "Steiner law firm").  See Intel Corp 6 F.3d at 622

14 (9th Cir. 1993).

15 First, the Court must determine a reasonable hourly rate.  Based on Mr. Harris'

16 significant experience in intellectual property cases, the prevailing market rate and the

17 novelty of certain issues presented, the Court finds that his average fee of $300 is reasonable.

18 In addition, in reviewing the two associates who assisted Mr. Harris, the Court finds that an

19 average rate of $205 is appropriate based on the same considerations.[6] Further, based on Mr.

20 Steiner's experience in such cases, the prevailing market rate, and the novelty of certain

21 issues presented, it appears that an hourly rate of  $350 is a reasonable fee.   While

22 Defendants seek a fee of $425 per hour for Mr. Steiner's services, the Court is not persuaded

23 in considering the relevant factors, that such a fee is reasonable for purposes of this litigation.

24 See Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992) (stating that courts apply the

25 market rate of attorneys practicing in the forum community, not the rates of out-of-state

27 [6] The Court also finds that the average rate of $75 per hour for time expended by legal
28 assistants is a reasonable fee.  Notably, the Steiner law firm provides no discussion of any
analogous fees incurred.  Thus, the Court will not address such fees.

counsel).   Similarly, the Court finds that a reasonable fee for the hours expended by associates of the Steiner law firm is $225 per hour.

Second, the Court must determine the number of hours reasonably expended relevant to the lodestar method.  In reviewing Defendants' submission, the Court finds that the hours apportioned by the Steiner law firm and Fennemore Craig are reasonable.  Mr. Steiner and Mr. Harris estimate in their affidavits that 75% of the total fees expended by the respective firms were used in defending Defendant Hernandez and Renoir against Plaintiff's claims.  Of this 75%, they estimate that approximately 37% of the time was used to prepare a defense for Defendant Hernandez in response to Plaintiff's claims.  Mr. Steiner and Mr. Harris also estimate that 13% of the defense fees were used to prepare a defense for Defendant Renoir in response to Plaintiff's Lanham Act claim.  Lastly, Mr. Steiner and Mr. Harris estimate that 25% of the total time was used to prepare and prosecute Defendant Renoir's successful counterclaim against Plaintiff.  In light of the history of this litigation and the claims and issues presented, the Court finds that these estimates are reasonable evaluations of the total time expended in defending and prosecuting the aforementioned claims.

Accordingly, with respect to the number of reasonable hours expended by Mr. Steiner and the Steiner law firm, the Court finds the following hours to be appropriate multipliers for the relevant time invested:

| | Hernandez | Renoir- Lanham Def. | Renoir - Lanham Pla. |
|---|---|---|---|
| Mr. Steiner | 269.60 hrs (728.66 hrs. x 37%) | 94.73 hrs. (728.66 hrs. x 13%) | 242.89 hrs (971.55 hrs. x 25%) |
| Associates of Steiner Law Firm | 162.96 hrs (440.43 hrs. x. 37%) | 57.26 hrs (440.43 hrs. x 13%) | 146.81 hrs (587.25 hrs. x 25%) |

Thus, based on the lodestar method, Defendant Hernandez is entitled to attorneys' fees of $131,026[7] based on Mr. Steiner and the Steiner law firm's representation and defense of Plaintiff's copyright infringement and Lanham Act claims.  Additionally, Defendant Renoir

---

[7] $94,360 (269.60 hrs * $350) + $36,666 (162.96 hrs.* $225).

1    is entitled to attorneys' fees of $164,082.75[8] based on Mr. Steiner and the Steiner law firm's

2    representation in Defendant Renoir's defense and prosecution of the Lanham Act claims.

3          Further, based on the same allocation provided by Mr. Harris' affidavit and

4    attachments, the Court finds the following to be an accurate representation of the number of

5    reasonable hours expended on behalf of Defendants Hernandez and Renoir by Fennemore

6    Craig:

|   | Hernandez | Renoir- Lanham Def. | Renoir - Lanham Pla. |
|---|---|---|---|
| Mr. Harris | 112.92 hrs (305.18 hrs x 37%) | 39.67 hrs (305.18 hrs. x 13%) | 101.73 hrs (406.90 hrs. x 25%) |
| Associates | 9.66 hrs (26.10 hrs. x. 37%) | 3.39 hrs (26.10 hrs. x 13%) | 8.70 hrs (34.80 hrs. x 25%) |
| Legal Assistants | 9.68 hrs (26.18 hrs. x 37%) | 3.40 hrs (26.18 hrs. x 13%) | 8.73 hrs (34.9 hrs. x 25%) |

13    Thus, based on the lodestar method, Defendant Hernandez is entitled to attorneys' fees

14   of $36,582.30[9] for the defense afforded by Mr. Harris and Fennemore Craig.  In addition,

15   Defendant Renoir is entitled to attorneys' fees of $45,808.20[10] for the defense of Plaintiff's

16   Lanham Act claim and the prosecution of Defendant Renoir's Lanham Act counterclaim.

17    Lastly, the Court finds no reason to increase or decrease these lodestar amounts.

18   **E.    Sanctions:  28 U.S.C. § 1927**

19    Finally, the Court will deny Defendants Hernandez and Renoir's request for the

20   imposition of monetary sanctions against Plaintiff's counsel, Mr. Morris, pursuant to 28

21   U.S.C. § 1927, which provides that "[a]ny attorney . . . admitted to conduct cases in any court

22   of the United States . . . who so multiplies the proceedings in any case unreasonably and

---

[8]$33,155.50 (94.73 hrs * $350) + 12,883.50 (57.26 hrs. * $225) + $85,011.50 (242.89 hrs. * $350) + $33,032.25 (146.81 hrs. * $225).

[9] $33,876 (112.92 hrs. * $300) + $1,980.30 (9.66 hrs. * $205) + $726 (9.68 hrs. * $75).

[10] $11,901 (39.67 hrs. * $300) + $694.95 (3.39 hrs. * $205) + $255 (3.40 hrs. * $75) + $30,519 (101.73 hrs. * $300) + $1,783.50 (8.70 hrs. * $205) + $654.75 (8.73 hrs. * 75).

1    vexatiously may be required by the court to satisfy personally the excess costs, expenses and

2    attorneys' fees reasonably incurred because of such conduct." "Sanctions pursuant to section

3    1927 must be supported by a finding of subjective bad faith."  New Alaska Development

4    Corp. v. Guetschow, 869 F.2d 1298, 1306 (9th Cir. 1989).  Based on the record before this

5    Court, there is an insufficient basis to support such an award against Plaintiff's counsel.

6    Clearly, this litigation has been contentious, as evidenced by the numerous motions for

7    sanctions in the record and the Parties inability to communicate or effectively meet and

8    confer; however, while such conduct frustrates these proceedings, the Court is unable to

9    make a finding of "subjective bad faith" to support Defendants Hernandez and Renoir's

10   request for sanctions under 28 U.S.C. § 1927.

11   **VI.    Summary**

12        The Court grants in part Plaintiff's Motion for judgment as a matter of law pursuant

13   to Fed.R.Civ.P. 50(b), with respect to the compensatory damages award of Defendant

14   Renoir's Lanham Act counterclaim against Plaintiff.  Because Defendant Renoir failed to

15   introduce any evidentiary basis to support his injury at trial, this award will be set aside.

16   However, the Court's finding does not impact the injunctive or lost profits relief afforded

17   under the Lanham Act.  The Court also finds that monetary sanctions are necessary and

18   justified against Plaintiff and Plaintiff's counsel based on the events surrounding the

19   previously stipulated and scheduled depositions of Gilles and Michel Guino.  Upon reurging,

20   the Court is persuaded that any issue surrounding such depositions should have been raised

21   by Plaintiff long before Defendants' counsel arrived in Paris, France for the depositions. The

22   Court will also deny without prejudice Plaintiff's request for attorneys' fees under 17 U.S.C.

23   § 505 of the Copyright Act pending the outcome of Defendants' appeal to the Ninth Circuit

24   Court of Appeals.  Should Plaintiff prevail on appeal, it is granted leave to reuge such a

25   motion in compliance with LRCiv. 54.2. Based on the Rima Defendants' successful defense

26   of Plaintiff's Lanham Act claim, the Court finds that attorneys' fees are warranted with

27   respect to the defense of such claims under 15 U.S.C. § 1117(a).  Similarly, the Court finds

28

1    that both Defendants Hernandez and Renoir are entitled to recover certain portions of their

2    attorneys' fees pursuant to 17 U.S.C. § 505 and 15 U.S.C. §1117(a).

3        **Accordingly,**

4        **IT IS HEREBY ORDERED** granting in part Plaintiff's Motion for Judgment under

5    Fed.R.Civ.P. 50(b), or in the Alternative for a New Trial under Rule 59.  (Dkt.#550).  The

6    Motion is granted to the extent Defendant Renoir's monetary judgment pursuant to his

7    Lanham Act claim of $90,000 in actual damages is vacated.  However, the lost profits award

8    and the Court's previously imposed injunctive relief stands.

9        **IT IS FURTHER ORDERED** denying without prejudice Plaintiff's Application for

10   Award of Attorneys' Fees and Costs under 17 U.S.C. § 505. (Dkt.#551).  Plaintiff is granted

11   leave to reurge the motion, if appropriate, on conclusion of the Ninth Circuit proceedings.

12       **IT IS FURTHER ORDERED** granting the Rima Defendants' Renewed Motion for

13   Sanctions. (Dkt.#555).  Plaintiff's counsel will bear 55% of the Rima Defendants' costs

14   associated with the May 18 and 19, 2005 depositions in Paris, France, and Plaintiff will bear

15   30% of the costs.

16       **IT IS FURTHER ORDERED** granting Defendant Hernandez and Renoir's Renewed

17   Motion for Sanctions against Plaintiff.  (Dkt.#580).  Plaintiff's counsel will bear 55% of the

18   these Defendants' costs associated with the May 18 and 19, 2005 depositions in Paris,

19   France, and Plaintiff will bear 30% of the costs.

20       **IT IS FURTHER ORDERED** granting the Rima Defendants' Motion for Attorneys'

21   Fees Pursuant to the Lanham Act. (Dkt.#557). The Rima Defendants are entitled to an award

22   of $66,780 for the fees expended by the law firm of Venable, Baetjer, Howard & Civiletti,

23   LLP; and $111,422 for the fees of the law firm of Yen, Pilch, Komadina & Flemming, P.C.

24       **IT IS FURTHER ORDERED** granting in part Defendants Hernandez and Renoir's

25   Motion for Attorneys' Fees. (Dkt.#563).  Defendant Hernandez is awarded fees of $131,026

26   based on the representation and defense of Mr. Steiner and the Steiner law firm.  Defendant

27   Hernandez is also awarded fees of $36,582.30 for the defense afforded by Mr. Harris and

28   Fennemore Craig.  Defendant Renoir is awarded fees of $164,082.75 based on Mr. Steiner

and the Steiner law firm's representation in Defendant Renoir's defense and prosecution of certain claims.  Defendant Renoir is also awarded fees of $45,808.20 based on Mr. Harris and Fennemore Craig's representation.  Defendants Hernandez and Renoir are also awarded $6,176 in non-taxable costs incurred by Fennemore Craig.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to amend the Amended Judgment consistent with this Order.

DATED this 30th day of October, 2007.

Mary H. Murguia
United States District Judge